IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : Criminal Action No. 14-53-UNA |
| v. | : |
| JOSEPH L. CAPANO and RIVERBEND COMMUNITY LLC, | : |
| Defendants. | : REDACTED |

## INDICTMENT

**THE GRAND JURY FOR THE DISTRICT OF DELAWARE CHARGES THAT:**

### Introduction

*Clean Water Act*

1.   The Clean Water Act ("CWA") prohibits the discharge of any pollutant into waters of the United States, including adjacent wetlands, except in compliance with a permit issued pursuant to Section 404 of the Clean Water Act by the United States Army Corps of Engineers ("ACOE") or by a state with an approved permit program. 33 U.S.C. §§ 1311(a) and 1344. In the State and District of Delaware, CWA permits for discharging pollutants into wetlands are issued by the ACOE.

2.   The ACOE's regulatory jurisdiction extends over, *inter alia*, traditional navigable waters, their tributaries, and wetlands which are adjacent to any of the above. 33 C.F.R. § 328.3(a).

3. The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. § 1362(6). The definition includes dredged and fill material. 33 U.S.C. § 1344.

4. Dredged material is defined at 40 C.F.R. § 232.2 as any "material that is excavated or dredged from waters of the United States." Fill material is defined at 40 C.F.R. § 232.2 as any "pollutant" which replaces portions of the "waters of the United States with dry land or which changes the bottom elevation of a water body for any purpose."

5. The term "discharge of a pollutant" is defined as the addition of any pollutant to navigable waters from any point source. 33 U.S.C. § 1362(12)(A).

6. The term "navigable waters" means the waters of the United States, including the territorial seas. 33 U.S.C. § 1362(8). Wetlands constitute "waters of the United States" within the meaning of the CWA and are therefore under federal jurisdiction. 33 C.F.R. § 328.3(a)(1). Wetlands are areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. 33 C.F.R. § 328.3(b). Wetlands generally include swamps, marshes, bogs, and similar areas. 33 C.F.R. § 328.3(b).

7. The term "point source" includes "any discernible, confined and discrete conveyance," and includes, for example, bulldozers, backhoes, plowing equipment, and other earthmoving equipment. 33 U.S.C. § 1362(14).

8. Discharging pollutants in wetlands areas subject to federal jurisdiction without a permit is sometimes referred to as "unauthorized work."

### *The Parties*

9.      At all times relevant to this Indictment, JOSEPH L. CAPANO ("CAPANO"), a resident of the State and District of Delaware, was the managing member of RIVERBEND COMMUNITY LLC ("RIVERBEND LLC"), a limited liability company organized under the laws of the State of Delaware.

10.     At all times relevant to this Indictment, RIVERBEND LLC managed the construction and marketing of a residential development project located in the City of New Castle, Delaware known as Riverbend at Old New Castle ("the Riverbend Site"). CAPANO was the primary decision-maker with respect to the construction of the Riverbend Site.

11.     At all times relevant to this Indictment, the Riverbend Site was located off of Delaware State Route 9 in New Castle County, Delaware, and consisted of three land parcels. RIVERBEND LLC owned a portion of the Riverbend Site, but managed the construction of the entire Riverbend Site. The Riverbend Site contained wetlands subject to federal jurisdiction, in that it included wetlands adjacent to Army Creek, which is a navigable waterway pursuant to Section 10 of the Rivers and Harbors Act (33 U.S.C. § 403), and the Delaware River, a navigable interstate water body.

### Presence of Wetlands at Riverbend Site

12.     The Riverbend Site was only accessible by one route: a road which intersected with Delaware State Route 9 and crossed through wetlands subject to federal jurisdiction. The portion of the road that crossed through wetlands subject to federal jurisdiction is referred to herein as the "Causeway." Wetlands subject to federal jurisdiction were present on either side of the Causeway, and a portion of the Causeway itself was wetlands subject to federal jurisdiction. The wetlands at issue, sometimes referred to herein as the "Causeway Wetlands," are adjacent to

traditionally navigable waters, the Delaware River, a navigable interstate water body, and its navigable tributary, Army Creek.

13. In or about June 2004, a previous owner of the Riverbend Site procured a jurisdictional determination ("JD") covering most of the Riverbend Site. A JD is an ACOE-approved report or plan that identifies wetlands subject to federal jurisdiction. Often the initial work of delineating the wetlands and preparing the plans is done by an engineer hired by a landowner. After the ACOE analyzes and accepts a wetlands delineation as accurately identifying wetlands subject to federal jurisdiction, the approved wetlands delineation becomes known as a JD.

14. The June 2004 JD referenced in Paragraph 13 was created by Duffield Associates, an engineering firm, and was approved by the ACOE. The JD designated certain areas of the Riverbend Site as wetlands subject to federal jurisdiction. Both the Causeway Wetlands and several areas of wetlands located south of an internal road now known as Lamprey Lane ("the Lamprey Lane Wetlands") were identified as wetlands subject to federal jurisdiction in the 2004 JD.

15. In 2005, CAPANO, on behalf of RIVERBEND LLC, hired an engineering firm, Green Stone Engineering ("Green Stone"), to create plans for development of the Riverbend Site and to obtain the necessary permits for any intended construction activity in the wetlands.

16. On multiple occasions in 2005, a Green Stone employee informed CAPANO of the presence of the Causeway Wetlands, the Lamprey Lane Wetlands, and other wetlands, and further informed CAPANO that any construction or disturbance in wetlands subject to federal jurisdiction would require a permit from the ACOE.

4

17. Although CAPANO originally hired Green Stone to assist CAPANO and RIVERBEND LLC with the permitting process (including getting permits from the ACOE), at some point in 2006 or 2007, CAPANO informed Green Stone that he would obtain the necessary permits himself.

18. Neither CAPANO nor RIVERBEND LLC applied for a CWA permit from the ACOE for any portion of the Riverbend Site until March 10, 2010.

**Unauthorized Work at Riverbend Site and ACOE Instructions to Stop Unauthorized Work**

19. Between in or about April, 2007, and on or about October 14, 2009, various RIVERBEND LLC employees and/or contractors, acting on behalf of and at the direction of defendants CAPANO and RIVERBEND LLC, conducted earthmoving, construction and excavation activities on the Riverbend Site in wetlands subject to federal jurisdiction, including:

   a. Widening the Causeway and installing retaining walls on either side of the Causeway, including placing large amounts of dirt into the Causeway Wetlands;

   b. Placing additional fill material on or in the Causeway Wetlands for the purpose of installing sidewalks, curbing and other aesthetic improvements; and

   c. Receiving delivery of and placing gravel and other fill material on or in the Causeway Wetlands.

20. On January 2, 2009, the ACOE was made aware by the State of Delaware's Department of Natural Resources and Environmental Control ("DNREC") that construction activity was taking place at the Riverbend Site.

5

21. On January 16, 2009, representatives from the ACOE met with CAPANO and others to discuss the ACOE's concern that unauthorized work may have occurred in wetlands subject to federal jurisdiction at the Riverbend Site. At the meeting, with CAPANO present, an ACOE employee specifically discussed the 2004 JD referenced herein in Paragraphs 13 and 14, which included the designation of the Causeway Wetlands and the Lamprey Lane Wetlands as wetlands subject to federal jurisdiction. When CAPANO said he planned to install utilities at the Riverbend Site in the next sixty (60) days, he was instructed by the ACOE representatives not to do unauthorized work in wetlands subject to federal jurisdiction, including but not limited to utility installation.

22. On or about March 18, 2009, a representative from the ACOE sent a Cease and Desist letter to defendants CAPANO and RIVERBEND LLC ("the Cease and Desist Letter"). The Cease and Desist Letter advised CAPANO and RIVERBEND LLC that "[r]ecent inspection by personnel of this office has revealed that unauthorized work, including the discharge of dredged and/or fill material, has been perform in waters of the United States, including wetlands." The Cease and Desist Letter advised defendants CAPANO and RIVERBEND LLC immediately to cease and desist from "conducting or permitting any further work of this nature [unauthorized work] in areas subject to Federal jurisdiction including placing asphalt on existing road crossings, placing additional dredged and/or fill material in waters and/or wetlands, and installing utilities along existing road crossings."

23. The March 18, 2009 Cease and Desist Letter also referenced the 2004 JD described in Paragraphs 13 and 14 above, indicating that, "[a] portion of the above noted property is subject to a verified jurisdictional determination... prepared by Duffield Associates, Wilmington, Delaware, dated June 25, 2004."

6

24. After the issuance of the March 18, 2009 Cease and Desist Letter, various RIVERBEND LLC employees and/or contractors, acting on behalf of and at the direction of defendants CAPANO and RIVERBEND LLC, continued to conduct earthmoving, construction and excavation activities on the Riverbend Site in areas subject to federal jurisdiction, including placing additional fill material on or in the Causeway Wetlands and the Lamprey Lane Wetlands.

25. In or around May and June 2009, CAPANO, on behalf of RIVERBEND LLC, engaged in separate discussions with the City of New Castle's Municipal Services Corporation and the ACOE regarding RIVERBEND LLC's plans to install a water main above the Causeway to avoid any disturbance to the Causeway Wetlands.

26. On or about October 14, 2009, various RIVERBEND LLC employees and/or contractors, acting on behalf of and at the direction of defendants CAPANO and RIVERBEND LLC, conducted various earthmoving, construction and excavation activities on the Riverbend Site in wetlands subject to federal jurisdiction, including:

   a. Digging a trench in the Causeway Wetlands to allow for the installation of 12-inch pipe to serve as a water main pipe;

   b. Placing that 12-inch water main pipe into the trench in the Causeway Wetlands;

   c. Backfilling the trench in the Causeway Wetlands; and

   d. Receiving delivery of and placing gravel into the Causeway Wetlands.

27. When CAPANO, on behalf of RIVERBEND LLC, directed RIVERBEND LLC employees and/or contractors to engage in the unauthorized work described in Paragraph 26, CAPANO and RIVERBEND LLC were well aware that the ACOE considered the Causeway Wetlands to be wetlands subject to federal jurisdiction.

7

28. The work described in Paragraph 26 was conducted by employees of various contractors that RIVERBEND LLC used at the Riverbend Site, including an employee from Company 1 and an employee from Company 2. The employee from Company 2 was working "off the clock" in his personal capacity at the request of CAPANO, because Company 2 had refused to do the work described in Paragraph 26.

29. CAPANO was physically present at the Causeway at the Riverbend Site on October 14, 2009, and watched as some or all of the work described in Paragraph 26 took place.

30. Between approximately October 2009 and November 2009, CAPANO, on behalf of RIVERBEND LLC, directed RIVERBEND LLC employees and/or contractors to install gas lines in the Lamprey Lane Wetlands.

31. Between approximately January 16, 2009 and March 19, 2010, CAPANO, on behalf of RIVERBEND LLC, directed RIVERBEND LLC employees and/or contractors to install electric lines underground in the Lamprey Lane Wetlands.

32. The ACOE issued additional Cease and Desist letters to CAPANO and RIVERBEND LLC on or about October 26, 2009, December 9, 2009, and March 25, 2010.

## COUNT ONE

33. Paragraphs 1 through 32 are incorporated herein.

### Object of the Conspiracy

34. It was an object of the conspiracy to violate the Clean Water Act and to conceal that violation from the Executive Branch of the government of the United States, among others.

### Manner and Means

It was part of the conspiracy that:

8

35. Defendants CAPANO and RIVERBEND LLC, and their co-conspirators, discharged, and caused to be discharged, fill material into wetlands subject to federal jurisdiction located on the Riverbend Site by directing various earthmoving, construction and excavation activities in these wetlands subject to federal jurisdiction, including, but not limited to, the Causeway Wetlands and the Lamprey Lane Wetlands, knowing that those areas were wetlands subject to federal jurisdiction.

36. Defendant CAPANO, on behalf of defendant RIVERBEND LLC, instructed employees and/or contractors to conduct various earthmoving, construction and excavation activities in wetlands subject to federal jurisdiction during evening hours, on weekends, and "off the clock" to avoid detection by various state, local and federal inspectors.

37. In order to continue and conceal the conduct referred to in Paragraphs 35 and 36, defendant CAPANO, on behalf of defendant RIVERBEND LLC, misrepresented facts and withheld material information from the ACOE, made false statements to ACOE officials who were conducting investigations into activities at the Riverbend Site, and knowingly disregarded ACOE's instructions to cease unauthorized work.

### Overt Acts

38. In or about April 2007, defendant CAPANO, on behalf of defendant RIVERBEND LLC, directed a co-conspirator, an individual known to the Grand Jury, to install retaining walls in the Causeway Wetlands, knowing that the Causeway Wetlands were wetlands subject to federal jurisdiction. Defendant CAPANO, on behalf of defendant RIVERBEND LLC, asked that co-conspirator to install retaining walls in the Causeway Wetlands on the weekends, and to do the work himself, even though excavation was not a common part of the co-

9

conspirator's duties, because other contractors refused to install the retaining walls in the Causeway Wetlands.

39. In or about April 2007, this co-conspirator placed fill material into the Causeway Wetlands, and in so doing widened the Causeway and raised the elevation of the Causeway by several feet. The placement of the fill material into the Causeway Wetlands replaced portions of the Causeway Wetlands with dry land and/or changed the bottom elevation of the Causeway Wetlands.

40. On or about March 9, 2009, approximately 6,550 feet of 12-inch water main pipe was ordered by a RIVERBEND LLC contractor, Company 2. That water main pipe was delivered to the Riverbend Site beginning on approximately March 24, 2009.

41. In or around October, 2009, defendant CAPANO, on behalf of defendant RIVERBEND LLC, asked an employee of Company 2 to work "off the clock" – in other words, not in his capacity as a Company 2 employee – to install a portion of water main pipe in the Causeway Wetlands, because Company 2 refused to work in the Causeway Wetlands.

42. On or about October 14, 2009, various RIVERBEND LLC employees and/or contractors, including a Company 1 employee and the Company 2 employee referenced in Paragraph 41, acting on behalf of and at the direction of defendants CAPANO and RIVERBEND LLC, conducted various earthmoving, construction and excavation activities on the Riverbend Site, including:

    a. Digging a trench in the Causeway Wetlands to allow for the installation of 12-inch pipe to serve as a water main;

    b. Placing that 12-inch water main pipe into the trench in the Causeway Wetlands;

  c. Backfilling the trench in the Causeway Wetlands; and

  d. Receiving delivery of and placing gravel into the Causeway Wetlands.

43.  On or about October 30, 2009, defendant CAPANO paid Company 1 for its role in the work described in Paragraph 42. The check, signed by CAPANO, was written out of the account of "RUFUS LLC," which is a business owned by J.P., a CAPANO business partner.

44.  Between approximately October 2009 and November 2009, defendant CAPANO, on behalf of defendant RIVERBEND LLC, directed RIVERBEND LLC employees and/or contractors to install gas lines in the Lamprey Lane Wetlands.

45.  Between approximately January 16, 2009 and March 19, 2010, defendant CAPANO, on behalf of defendant RIVERBEND LLC, directed RIVERBEND LLC employees and/or contractors to install electric lines underground in the Lamprey Lane Wetlands.

46.  On or about October 22, 2009, an ACOE employee telephoned CAPANO. During that call, CAPANO told the ACOE employee that the water main pipe in the Causeway Wetlands had not yet been installed.

47.  On or about December 10, 2009, during an in-person meeting, CAPANO told ACOE employees that the water main pipe had already been installed in the Causeway Wetlands, and that the installation occurred sometime between November 2008 and January 2009. He further stated that his "people installed the water pipe across the [Causeway Wetlands] prior to the Corps' 1st meeting."

48.  On or about August 2, 2010, CAPANO executed an affidavit, which was later mailed to the ACOE by CAPANO's attorney. The affidavit said that "workers employed by Riverbend" installed a "water supply line" "in an area that the Army Corps of Engineers contends it has jurisdiction over, along the main entrance to the property, which is sometimes

11

referred to as the 'Causeway'" "prior to the Army Corps of Engineers issuing a Cease and Desist letter to Riverbend."

## CHARGING PARAGRAPH

49. From in or about April, 2007 through on or about August 2, 2010, the exact dates being unknown to the Grand Jury, in the District of Delaware, defendants,

**JOSEPH L. CAPANO and RIVERBEND COMMUNITY LLC,**

did knowingly, willfully and unlawfully combine, conspire and agree together and with others known and unknown to the Grand Jury to knowingly discharge and cause the discharge of a pollutant from a point source into the waters of the United States without a permit to do so, in violation of Title 33, United States Code, Sections 1319(c)(2)(A) and 1311(a).

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

50. Paragraphs 1 through 48 are incorporated herein.

51. On or about October 22, 2009, in the District of Delaware and elsewhere, the defendant,

**JOSEPH L. CAPANO,**

in a matter within the jurisdiction of the Executive Branch of the government of the United States:

    a. did willfully and knowingly falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the Executive Branch of the government of the United States, in that defendant CAPANO failed to inform the United States Army Corps of Engineers that a portion of the water main pipe crossing the Causeway Wetlands had been installed on or about October 14, 2009; and

   b. did knowingly and willfully make, and cause to be made, a materially false, fictitious and fraudulent statement and representation, in that defendant CAPANO stated to K.M., an employee of the United States Army Corps of Engineers, during a telephone call with K.M., that RIVERBEND LLC had not yet installed that portion of the water main pipe crossing the Causeway Wetlands, whereas, as the defendant then and there well knew and believed, that portion of the water main pipe crossing the Causeway Wetlands had been installed on or about October 14, 2009.

All in violation of Title 18, United States Code, Sections 1001(a)(1) and (a)(2).

## COUNT THREE

52. Paragraphs 1 through 48 are incorporated herein.

53. On or about December 10, 2009, in the District of Delaware and elsewhere, the defendant,

### JOSEPH L. CAPANO,

in a matter within the jurisdiction of the Executive Branch of the government of the United States:

   a. did willfully and knowingly falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the Executive Branch of the government of the United States, in that defendant CAPANO failed to inform the United States Army Corps of Engineers that a portion of the water main pipe crossing the Causeway Wetlands had been installed on or about October 14, 2009; and

   b. did knowingly and willfully make, and cause to be made, a materially false, fictitious and fraudulent statement and representation, in that defendant CAPANO stated to K.M., J.S., and T.H., employees of the United States Army Corps of Engineers, at a meeting

13

where CAPANO, K.M., J.S., and T.H. were present, with others, that RIVERBEND LLC employees had installed the water main pipe in the Causeway Wetlands "prior to the first meeting" with the United States Army Corps of Engineers, that is, before January 16, 2009, whereas, as the defendant then and there well knew and believed, the water main pipe in the Causeway Wetlands had been installed on or about October 14, 2009.

All in violation of Title 18, United States Code, Sections 1001(a)(1) and (a)(2).

## COUNT FOUR

54. Paragraphs 1 through 48 are incorporated herein.

55. On or about August 2, 2010, in the District of Delaware and elsewhere, the defendant,

### JOSEPH L. CAPANO,

in a matter within the jurisdiction of the Executive Branch of the government of the United States, did knowingly and willfully make, and cause to be made, a materially false, fictitious and fraudulent statement and representation, in that he executed an affidavit that was later mailed to the United States Army Corps of Engineers, an agency of the United States, in which defendant CAPANO stated that the water main pipe in the Causeway Wetlands was installed prior to the United States Army Corps of Engineers issuing a Cease and Desist letter to RIVERBEND LLC, that is, prior to March 18, 2009, whereas, as the defendant then and there well knew and believed, the water main pipe in the Causeway Wetlands had been installed on or about October 14, 2009.

All in violation of Title 18, United States Code, Section 1001(a)(3).

A TRUE BILL:

GRAND JURY FOREPERSON

DAVID C. WEISS
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C § 515

By: _____
Jennifer K. Welsh
Assistant United States Attorney

Dated: 9/23/14